11WILLIAMS, Judge.
In this action for damages alleging a breach of contract, the plaintiff, Louisiana Gaming Corporation (“Louisiana Gaming”), appeals a judgment in favor of the defendant, JDH Limited, L.L.C. (“JDH”). The district court dismissed plaintiffs claims, finding that the agreement was not in effect when JDH purchased the property. For the following reasons, we affirm.
FACTS
Louisiana Gaming, a Louisiana corporation domiciled in Shreveport, Louisiana, is a licensed operator of video poker machines. JDH is a Louisiana limited liability company domiciled in Shreveport. JDH is the owner of the Pelican Inn-Airport, which is located on Monkhouse Drive in Shreveport, and formerly known as the Park Inn International Motel (“Park Inn”). In September 1992, Louisiana Gaming and Pub in the Park (Park Inn International Motel) executed an “Agreement Regarding Video Draw Poker Devices,” which granted Louisiana Gaming the exclusive right to operate video poker machines inside the motel for a period of 36 months. Under the agreement, Louisiana Gaming agreed to pay the motel 50% of the net revenue generated by operation of the video poker devices.
The agreement was signed by Geneva Miller and Patrick Magee, on behalf of the Park Inn. At the time, Jay Hyman was *941 acting as the court-appointed keeper of the property during foreclosure proceedings, which were initiated against the owner by the first mortgage holders, Jay Hyman, Beth Hyman, Amvet Management Corp., Susan Holt and JDH Charitable Trust ( “Hyman creditors”). Miller had been a motel employee prior to the foreclosure and she remained working as the manager while Hyman was administering the property as keeper. Hyman authorized Miller to sign the agreement on behalf of the motel. In January 1993, Louisiana Gaming installed its video poker devices in the motel.
|2In March 1993, at a sheriffs sale, ownership of the Park Inn was adjudicated to the Hyman creditors. One month later, on April 6, 1993, the creditors transferred ownership of the motel to JDH by a cash sale deed. The owners of JDH are Jay Hyman, Beth Hyman, Amvet Management Corp., JDH Charitable Trust and Robert Walsky, who had purchased the interest formerly held by Holt. The cash sale deed was recorded in the Conveyance Records of Caddo Parish in June 1993. However, the agreement with Louisiana Gaming had not been recorded in the public records of Caddo Parish. The motel was subsequently renamed the Pelican Inn-Airport.
After JDH obtained ownership of the property, Louisiana Gaming continued to operate the video poker machines until April 1994, when Jay Hyman, acting as president of JDH, made a written demand that Louisiana Gaming remove the devices from the Pelican Inn. JDH leased the lounge and other portions of the motel to Airline Car Rental, Inc. d/b/a Airport Truck and Travel Center (“Airline”), for the purpose of constructing and operating a video poker truck stop casino. Airline then agreed to give Southwest Gaming Services of Louisiana (“Southwest”) the exclusive right to operate video poker devices in the motel.
In September 1994, the plaintiff, Louisiana Gaming, filed a petition for damages alleging breach of contract by the defendant, JDH. After a trial, the district court rendered judgment dismissing plaintiffs claims, finding that the agreement was not binding on JDH. The plaintiff appeals the judgment.
DISCUSSION
The plaintiff contends the trial court erred in finding that the agreement concerning the operation of video poker devices at the Park Inn was not enforceable against the defendant. Plaintiff argues that because the Hyman creditors authorized Miller to sign the agreement, they are bound by its terms, as is the defendant, which is controlled by those same creditors.
|aIf immovable property affected by a mortgage is seized in an action for its recognition, the seizing creditor may petition the court to appoint a keeper of the property. LSA-R.S. 9:5137. The keeper shall perform his duties as a prudent administrator, and shall not be liable to the owner of the seized property, or to any other person for any financial loss or damage claimed to have been suffered by reason of the management of the property by the keeper acting as a prudent administrator. LSA-R.S. 9:5138.
The plaintiff asserts that there is no evidence the Hyman creditors acted only in their capacity as keepers in directing Miller to sign the agreement. Contrary to plaintiffs assertion, the evidence shows that the creditors could only authorize Miller to sign the contract for use of the motel in their capacity as keepers of the seized property, since they were not the owners of the motel when the agreement was signed.
A keeper functions in lieu of the sheriff, who upon seizure of the property, is entitled under LSA-C.C.P. art. 328 to continue the operation of any property under seizure, including a business. Pioneer Bank & Trust Co. v. Oechsner, 468 So.2d 1164 (La.1985). The sheriff has the power of administration of all seized property, and if *942 immovable property is not occupied by an owner and is not under lease, the sheriff may lease it for a term not beyond the date of judicial sale. LSA-C.C.P. art. 328.
Pursuant to Article 328, the keeper of seized property, acting in lieu of the sheriff, may lease such property only for a term which does not extend beyond the date of judicial sale. Under the agreement, plaintiff in effect leased an area of the motel in which to operate video poker devices. Thus, the agreement, which was . executed by plaintiff and Miller during Hyman’s administration of the property as keeper, could not be enforced after the date of the sheriffs sale on March 1Ó, 1993. Consequently, the plaintiffs contention that the agreement was binding on |4the Hyman creditors after the sale of the seized property lacks merit.
The plaintiff argues that although the written instrument was not filed in the public records of the parish, the contract is binding on the Hyman creditors and the defendant because they accepted the benefits of the agreement after acquiring ownership of the property.
The public records doctrine provides that a contract or other written instrument relating to immovable property shall not bind or affect third persons or third parties unless and until filed for registry in the office of the recorder of the parish where the land is situated. LSA-R.S. 9:2721; Avenue Plaza, L.L.C. v. Falgoust, 94-2491 (La.App. 4th Cir. 4/26/95), 654 So.2d 838.
An obligor and a third person may agree to an assumption by the latter of the former’s obligation. To be enforceable by the obligee against the third person, the agreement must be in writing. LSA-C.C. art. 1821.
Pursuant to the public records doctrine, whatever is not recorded is not effective except as between the parties, and a third person’s actual knowledge of unrecorded interests is immaterial. Dallas v. Farrington, 490 So.2d 265 (La.1986); Avenue Plaza, supra. In the present case, the contract expressly states that the agreement “is by and between LOUISIANA GAMING CORPORATION (“LGC”) and Pub in the Park (Park Inn International Motel)....” Neither Hyman, as keeper, nor the other seizing creditors signed as parties to the agreement. Thus, the Hyman creditors and defendant are not parties to the contract, but must be considered third persons to the transaction. The factual stipulations in the record show that the agreement had not been filed in the office of the Caddo Parish recorder at the time of the sheriffs sale to the Hyman creditors, and had not been filed when title was transferred to defendant. Therefore, pursuant to Article 1821, plaintiff cannot enforce the unrecorded written instrument against the defendant.
In addition, the plaintiff has failed to establish that the defendant or the | sHyman creditors assumed the obligations of the agreement. The defendant’s act of allowing plaintiff to temporarily operate video poker devices on the premises after acquiring ownership of the motel cannot be interpreted as an assumption of the contractual obligation absent a written instrument expressly stating such an intent. The plaintiff has not presented evidence of such a written assumption of the contract by defendant. Consequently, the defendant cannot be held liable under the terms of the agreement. The assignment of error lacks merit.
In concluding that the agreement for operation of video poker devices is not enforceable against the Hyman creditors or defendant, we pretermit a discussion of plaintiffs argument concerning the issue of piercing the corporate veil and of the remaining assignment of error regarding damages.
CONCLUSION
For the foregoing reasons, the trial court’s judgment is affirmed. The costs of *943 this appeal are assessed to the appellant, Louisiana Gaming Corporation.
AFFIRMED.